# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **TONY BURFORD,** | : | |
| | : | Case No.   19-cv-0577-JMY |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| **DELAWARE COUNTY,** | : | |
| **PENNSYLVANIA, ET AL.,** | : | |
| | : | |
| *Defendants* | : | |

## MEMORANDUM

**YOUNGE, J.**                                                    **DECEMBER 20, 2019**

In this 42 U.S.C. § 1983 action, Plaintiff Tony Burford, a state criminal defendant who was found not guilty, complains that local county policies and procedures associated with the retention of bail money to support court costs are unconstitutional, and that his Fifth, Eighth, and Fourteenth Amendment rights were violated through such retention.  Plaintiff seeks to represent the interests of other state criminal defendants who were similarly found not guilty and who had bail money unlawfully retained.  Plaintiff names as defendants: Delaware County, Angela Martinez (Prothonotary/Clerk of the Delaware County Court of Common Pleas), Patricia Oreskovich (Director of Court Financial Services), and Philip Pisani (Director of Pre-Trial/Bail Services) (collectively, "Defendants").

Now before the Court is Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ("Mot.," ECF No. 20).  The Court finds this matter appropriate for resolution without oral argument.  Fed. R. Civ. P. 78; L.R. 7.1(f).  For the reasons that follow, Defendants' Motion will be granted in part and denied in part.

# I.   BACKGROUND

## A.  Facts

Unless otherwise noted, the following facts and allegations are taken from Plaintiff's First Amended Complaint ("FAC," ECF No. 19).

"On January 15, 2016, the Plaintiff was arrested by the Darby Borough Police Department and charged with a number of criminal offenses[.]" (*Id.* ¶ 19.) "Bail was set . . . to $60,000.00, and the Plaintiff posted 10% or $6,000.00, which, pursuant to Delaware County Rule of Criminal Procedure 526(d) was delivered to the Delaware County Office of Judicial Support." (*Id.* ¶ 20.)[1] "On March 1, 2017, all of the charges against the Plaintiff had either been withdrawn, dismissed, or the Plaintiff was found not guilty." (*Id.* ¶ 21.)

Plaintiff alleges that "Defendants impermissibly failed to return a significant portion of his bail money, retaining the money to cover various court costs. Specifically, Defendants retained $811.80 to pay the Constable fees, $5.00 for Constable Education Training, $16.25 for Constable Certification, and $300.00 to the arresting agency[.]" (*Id.* ¶¶ 22-23.) Plaintiff avers that "[w]hen Defendants returned the bail money to the Plaintiff, he questioned the amount that was returned, and was informed by the Clerk that those were customary deductions and there was no means or procedure by which to contest the deductions or seek a refund." (*Id.* ¶ 25.) Plaintiff further notes that he "was informed when he tried to get the court costs returned to him,

---

[1] Delaware County Rule of Criminal Procedure 526(d)(1)-(2) provides, in relevant part: "The person for whom bail has been set . . . shall . . . execute the bail bond and deliver to the Office of Judicial Support for deposit in an account . . . a sum of money equal to 10 percent of the bail . . . When the conditions for the bail bond have been performed and the defendant discharged from all obligations in the case for which bail was set, the Office of Judicial Support shall return to the defendant or surety 60 percent of the amount deposited." The Court notes that Plaintiff does not challenge the 40 percent bail handling fee. (*See* FAC ¶ 24); *see also Buckland v. Cty. of Montgomery*, 812 F.2d 146, 147 (3d Cir. 1987) (affirming the dismissal of a due process challenge to Pennsylvania's rule related to a bail procedure that authorized the county to retain a "reasonable charge relating to the costs of administering the percentage cash bail program").

[that] there is no [r]ule or procedure that permits an arrestee who had his or her charges dismissed to challenge the retention of bail to cover court costs[.]" (*Id.* ¶ 40.)

Plaintiff now contends that because he "was found not guilty of the criminal charges, he must be presumed innocent of all the charges and the Defendants cannot, consistent with the Due Process Clause, impose any court costs on him, including those court costs imposed by the Defendants by the retention of [his] bail money." (*Id.* ¶ 29.) Plaintiff maintains that 44 Pa. Cons. Stat. Ann. § 7161(g)(16) "makes clear that where the criminal charges are dismissed or the defendant is found not guilty, constable fees cannot be assessed against the defendant, either by the court or through the retention of bail money, and instead must be assessed against the county[.]" (*Id.* ¶ 44.)[2] Plaintiff also contends that Pa. R. Crim. P. 535(D) does not permit "the assessment of costs upon the criminal defendant where the charges are dismissed or the defendant is found not guilty, and the costs can only be taken out of bail money where the defendant has been convicted[.]" (*Id.* ¶ 45.)[3]

Plaintiff concludes that "there is no law that authorized Defendants to assess the Plaintiff, who had some of his charges dismissed or withdrawn and who was found not guilty on the others, with court costs, including the imposition of constable service fees, and there is no law or [r]ule that authorized Defendants to take any court costs out of the Plaintiff's bail money;

---

[2] 42 Pa. Cons. Stat. Ann § 7161(g)(16) provides, in relevant part: "In all criminal cases wherein the defendant is discharged or indigent or the case is otherwise dismissed, the court shall assess to the county the fee provided in this section[.]"

[3] Pennsylvania Rule of Criminal Procedure 535(D) provides, in relevant part: "[W]ithin 20 days of the full and final disposition of the case, the deposit shall be returned to the depositor, less any bail-related fees or commissions authorized by law, and the reasonable costs, if any, of administering the percentage cash bail program." The Comment to Rule 535(D) provides that "[a]ny fees, commissions, or costs assessed pursuant to paragraph (D) must be reasonably related to the county's actual bail administration costs. Each county should establish local procedures to ensure adequate notice and uniform application of such fees, commissions, or costs."

instead, under the circumstances of this case, the law clearly placed the burden of paying the constable related fees on Defendant Delaware County." (*Id.* ¶ 46.)

Lastly, Plaintiff asserts that Delaware County "directly engaged in unconstitutional conduct when it adopted an unconstitutional policy, practice and/or custom to retain the bail money of persons whose criminal charges were dismissed, withdrawn and/or were found not guilty in order to pay certain costs of the prosecution, where the law clearly placed the payment of these costs on the County itself." (*Id.* ¶ 62.) Plaintiff also notes that "Defendants unconstitutional and illegal custom and/or practice and/or policy of taking court costs from the bail money . . . was part of a continuing, on-going pattern and was well-entrenched and permanent, extending over a period of many years[.]" (*Id.* ¶ 51.)

**B. Procedural History**

Plaintiff filed this action against Defendants on February 8, 2019. (ECF No. 1.) On June 3, 2019, Plaintiff filed the FAC, in which Plaintiff asserts six claims for relief:

**COUNT 1**: 42 U.S.C. § 1983—Fourteenth Amendment violation of procedural due process, asserted against all Defendants;

**COUNT 2**: 42 U.S.C. § 1983—Fourteenth Amendment violation of substantive due process, asserted against all Defendants;

**COUNT 3**: 42 U.S.C. § 1983—Eighth Amendment violation for imposition of excessive fines, asserted against all Defendants;

**COUNT 4**: 42 U.S.C. § 1983—Fifth Amendment violation for taking of property, asserted against all Defendants;

**COUNT 5**: 42 U.S.C. § 1983—*Monell* liability, asserted against Defendants Delaware County and Martinez; and

**COUNT 6**: Conversion, asserted against Delaware County and Martinez.

(*Id.* ¶¶ 53-97.) Plaintiff brings this case as a putative class action, seeking to represent one class consisting of: "[A]ll persons who had their criminal charges dismissed or who were found not

guilty and had a portion of their bail money retained by Delaware County for the payment of court costs, including but not limited to, Constable fees, Constable Education Act fees, Constable Certification fees and other court costs in violation of their rights under Pennsylvania law and the Due Process Clause of the Fourteenth Amendment and the Eighth Amendment of the United States Constitution." (*Id.* ¶ 13.) Plaintiff seeks injunctive relief and monetary damages, including compensatory damages, attorneys' fees and costs, and all other relief the Court deems just and equitable. (*Id.* ¶¶ 1, 64, 75, 83, 88, 92, 97.)

Defendants filed the instant Motion to Dismiss on June 5, 2019. Plaintiff filed his opposition to Defendants' Motion on July 3, 2019 ("Opp.," ECF No. 24). Defendants filed a reply on July 15, 2019 ("Reply," ECF No. 25).

## II.    LEGAL STANDARD

Defendants move to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(1), based on Eleventh Amendment sovereign immunity, and Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim. (Mot. at 7-8.)[4]

Federal Rule of Civil Procedure 12(b)(1) permits the Court to dismiss a proceeding for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). This includes cases where Eleventh Amendment immunity bars the plaintiff's claims, as the Third Circuit Court of Appeals has noted that "the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984)). "An actual determination must be made whether subject matter jurisdiction exists before a court may

---

[4] The Court adopts the pagination supplied by the CM/ECF docketing system.

turn to the merits of a case." *Tagayun v. Lever & Stolzenberg*, 239 F. App'x 708, 710 (3d Cir. 2007).

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). After *Iqbal*, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. *Id*. at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Iqbal*, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Iqbal*, 556 U.S. at 678).

Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "[the district court] must tak[e] note of the elements [the] plaintiff must plead to state a claim;" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

When a motion to dismiss is granted, the court must decide whether to grant leave to amend. The Third Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000); *Dole v.*

*Arco Chem. Co.*, 921 F.2d 484, 486 (3d Cir. 1990). However, a court need not grant leave to amend when it would be an exercise in futility. *City of Cambridge Retirement Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 879 (3d Cir. 2018) ("Leave to amend is properly denied if amendment would be futile, *i.e.*, if the proposed complaint could not 'withstand a renewed motion to dismiss.'") (quoting *Jablonski v. Pan. Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988)); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (recognizing that denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile).

## III. DISCUSSION

### A. Eleventh Amendment Sovereign Immunity

As a threshold matter, the Court must determine whether Defendant Martinez, in her official capacity as "Prothonotary/Clerk of the Delaware County Court of Common Pleas[,]" may invoke sovereign immunity. (FAC ¶ 4.)[5] The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. The Amendment affords states and state agencies immunity from suits brought by citizens in federal court, regardless of whether legal or equitable relief is sought. *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 89; *see also Thorpe v. New Jersey*, 246 F. App'x 86, 87 (3d Cir. 2007) ("The Eleventh Amendment of the U.S. Constitution protects a state or state agency from a suit brought in federal court by one of its own citizens regardless of the relief sought . . ."). Thus, "[u]nless a State has waived its

---

[5] In the FAC, Plaintiff asserts claims against the individual Defendants in both their individual/personal and official capacities. (*See* FAC at 1.) However, on June 17, 2019, Plaintiff stipulated "to remove all [o]fficial [c]apacity [c]laims against Defendants Oreskovich and Pisani." (ECF No. 23.)

Eleventh Amendment immunity or Congress has overridden it . . . a State cannot be sued directly in its own name regardless of the relief sought." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978)).

Plaintiff has no valid claim against Defendant Martinez as "Prothonotary/Clerk of the Delaware County Court of Common Pleas" because Pennsylvania statutory law provides that "there shall be one prothonotary for the court of common pleas" in every Pennsylvania county, 42 Pa. Cons. Stat. Ann. § 2731(a), and that each prothonotary has "authority . . . as an officer of the court." 42 Pa. Cons. Stat. Ann. § 2737(5). The Prothonotary's Office (and thus the Prothonotary in her official capacity) is part of the Delaware County Court of Common Pleas (*i.e.*, a part of the judicial system and therefore an "arm of the state") and is not a "person" under 42 U.S.C. § 1983. *See Kunkle v. Naugle*, 660 F. App'x 132, 135 (3d Cir. Aug. 19, 2016) (affirming district court decision to dismiss official capacity claims against court administrator and prothonotary of Lehigh County Court of Common Pleas pursuant to Eleventh Amendment immunity); *see also Arndt v. Bortner*, No. 14-1993, 2014 WL 5425423, at *2 (M.D. Pa. Oct. 22, 2014) (noting that clerk of court in the York County Court of Common Pleas has the protection of Eleventh Amendment immunity); *see also Malcomb v. Beaver Cty. Pa. Prothonotary, et al.*, No. 13-1772, 2014 WL 3892023, at *2-3 (W.D. Pa. July 31, 2014) (noting that Beaver County Court of Common Pleas prothonotary can invoke Eleventh Amendment immunity).

The Court of Common Pleas is immune as an arm of the Commonwealth. Under *Callahan v. City of Philadelphia*, 207 F.3d 668, 672 (3d Cir. 2000), "courts and agencies of the unified judicial system . . . are state rather than local agencies." Our Court of Appeals has expressly held that Pennsylvania's courts are state entities entitled to Eleventh Amendment immunity. *See Benn v. First Judicial Dist.*, 426 F.3d 233, 241 (3d Cir. 2005). And, this

immunity is applicable to 42 U.S.C. § 1983 claims. *See Chilcott v. Erie Cty. Domestic Relations*, 283 F. App'x 8, 10 (3d Cir. 2008). Pennsylvania statutes also reflect that Courts of Common Pleas are part of the broad "unified judicial system" in the Commonwealth. *See* 42 Pa. Cons. Stat. Ann. §§ 301, 911(a); *see also Mattas v. Supreme Court of Pa.*, 576 F. Supp. 1178, 1182 (W.D. Pa. 1983) (noting that "the government of the Commonwealth [includes] the courts and other offices and agencies of the unified judicial system . . .").

Accordingly, the Court dismisses all claims asserted against Defendant Martinez in her official capacity.

### B. Qualified Immunity and Quasi-Judicial Immunity

The individual Defendants, Martinez, Oreskovich, and Pisani, have also raised the doctrines of qualified immunity and quasi-judicial immunity as defenses to Plaintiff's claims asserted against them in their individual capacities. (*See* Mot. at 21-23.) The Court will address each defense in turn.

#### 1. *Qualified Immunity*

The individual Defendants argue that they are protected from suit in their individual capacities by the doctrine of qualified immunity. (*Id*. at 22.) Specifically, Defendants argue that Plaintiff fails to demonstrate "that the facts alleged establish the violation of a constitutional right . . . and that the right was *clearly established*." (*Id.* (emphasis in original))

In *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982), the United States Supreme Court held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See also Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015). Where a plaintiff fails to plead a violation of clearly

established law, "a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery" and a motion to dismiss under Rule 12(b)(6) on qualified immunity grounds is therefore procedurally proper. *See Thomas v. Indep. Twp.*, 463 F.3d 285, 291-94 (3d Cir. 2006); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

The United States Supreme Court initially set forth a mandatory two-part inquiry for determining whether a government official was entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Under *Saucier*, courts were required to first determine whether the facts alleged or shown were sufficient to make out a violation of a constitutional or federal statutory right. *Id*. If the record set forth or established no violation, no further inquiry was necessary. *Id*. On the other hand, if the plaintiff sufficiently pled or established a violation, courts would then determine whether the right at issue was clearly established at the time of the government official's alleged misconduct. *Id*. The Court receded from this mandatory sequence in *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), and stated: "[W]hile the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory," and judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."

Here, the Court finds the "clearly established" prong to be dispositive, and, therefore, exercises its discretion to analyze the second prong first. In so doing, the Court must "frame the precise contours of [the] right" the Plaintiff claims has been violated. *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 638 (3d Cir. 2015). In *Spady*, the Third Circuit provided the following guidance in regard to this task:

> We are mindful . . . that courts are "not to define clearly established law at a high level of generality." [*Ashcroft v. al-Kidd*, 563 U.S.

731, 741 (2011)] (citations omitted).  Instead, courts "must define the right allegedly violated at the appropriate level of specificity." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012).  Accepting [a] broad version of the right at issue "would . . . convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."  *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).  We are thus required to frame the right at issue "in a more particularized, and hence more relevant, sense," *Anderson*, 483 U.S. at 640, "in light of the case's specific context, not as a broad general proposition," *Saucier*, 533 U.S. at 201.

*Id*.  A right is clearly established either where there is applicable Supreme Court precedent, or, where no Supreme Court case is directly on point, where "existing precedent [has] placed the statutory or constitutional question '*beyond debate*.'"  *Id* at 639 (quoting *al-Kidd*, 563 U.S. at 741 (emphasis in original)).  It remains unsettled, however, "whether a robust consensus of cases of persuasive authority in the Court of Appeals" are sufficient to render a constitutional right clearly established.  *Id*.  Where "the firmly settled state of the law, established by a forceful body of persuasive precedent, would place a reasonable official on notice that his actions obviously violated a clearly established constitutional right[,]" the plaintiff's claim is clearly established, and qualified immunity is inapplicable.  *Id*.

Although Plaintiff generally pleads a claim that he was deprived of property without due process in violation of the Fourteenth Amendment (*see* FAC ¶¶ 53-64), this Court is mindful of the need to define the exact contours of the right at issue at an appropriate level of specificity. Thus, the right at issue here must be more precisely defined in the context of Plaintiff's claim. As a result, this Court construes Plaintiff as presenting a claim that his rights were violated by court officials who retained a portion of his bail money to cover court costs without first providing notice and an opportunity to be heard regarding the assessment of such costs.  Even if this Court assumes, *arguendo*, that this type of claim would amount to a seizure or deprivation of

Plaintiff's property without appropriate process (*see* Section III.C.1 *infra*), such a right cannot be said to be clearly established. In addition, the Court construes Plaintiff as presenting a claim that the unlawful retention of a portion of his bail money to cover court costs constitutes an impermissible penalty in violation of the Eighth Amendment. (*See* FAC ¶¶ 76-83.) Again, even if this Court assumes, *arguendo*, that this type of claim would amount to an excessive fine in violation of the Eighth Amendment, such a right also cannot be said to be clearly established. Lastly, the Court construes Plaintiff as presenting a claim that the unlawful retention of a portion of his bail money to cover court costs constitutes a taking of Plaintiff's property without just compensation in violation of the Fifth Amendment. (*See* FAC ¶¶ 84-88.) The Court finds, as well, that this right cannot be said to be clearly established at this time.

Plaintiff, in his Opposition to Defendants' Motion, has failed to identify any Supreme Court decisions which even suggest that these rights are clearly established, and this Court is aware of no such caselaw. Plaintiff has likewise failed to show that there is any robust consensus among the various Courts of Appeals which would suggest that the rights he asserts are clearly established, and this Court has found no cases which could arguably clearly establish these rights. Therefore, the Court finds that the rights Plaintiff claims were violated when a portion of his bail money was unlawfully retained are not "clearly established," and, consequently, all individual Defendants are entitled to qualified immunity as to those claims. *See Spady*, 800 F.3d at 637-39. Accordingly, the Court dismisses Plaintiff's Fifth, Eighth, and Fourteenth Amendment claims asserted against the individual Defendants in their individual/personal capacities.

2. *Quasi-Judicial Immunity*

Next, the individual Defendants contend that "in their individual capacity [they] are entitled to judicial or quasi-judicial immunity as this immunity is available to all those performing acts that are judicial in nature and integral to the judicial process[.]" (Mot. at 21.) In response, Plaintiff argues that "the individual Defendants are not entitled to [j]udicial/[q]uasi-[j]udicial [i]mmunity" because "the Defendants['] handling of the bail money was not closely associated with the judicial process, but instead was purely ministerial." (Opp. at 23-24.)[6]

Judges are absolutely immunized from a civil rights suit for money damages arising from their judicial acts. *Addlespurger v. Corbett*, 461 F. App'x 82, 85 (3d Cir. 2012). "The doctrine of judicial immunity is supported by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435 (1993). Under the functional approach adopted by the Supreme Court, the doctrine only applies when an act is "judicial." *Id.*; *see also Forrester v. White*, 484 U.S. 219, 229 (1988) ("It was the nature of the function performed, not the identity of the actor who performed it, that informed our immunity analysis.").

"Those who perform functions closely associated with the judicial process, such as court clerks and prothonotaries, enjoy quasi-judicial immunity when performing a function directly related to the court's decision-making activities or carrying out a judicial order." *Walton v. Denlinger*, No. 5-5170, 2007 WL 4615960, at *3 (E.D. Pa. Dec. 21, 2007) (citing *Lockhart v. Hoenstine*, 411 F.2d 455, 460 (3d Cir. 1969)). "When judicial immunity is extended to officials

---

[6] As discussed *supra*, the Court has dismissed Plaintiff's constitutional claims asserted against the individual Defendants in their individual/personal capacities. *See* Section III.B.1. Accordingly, the Court will only analyze quasi-judicial immunity as it relates to Plaintiff's conversion claim against Defendant Martinez in her individual capacity. (*See* FAC ¶¶ 93-97.)

other than judges, it is because their judgments are 'functional[ly] comparab[le]' to those of judges—that is, because they, too, 'exercise a discretionary judgment' as a part of their function." *Antoine*, 508 U.S. at 436 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 423 n.20 (1976)); *see also Cleavinger v. Samaar*, 474 U.S. 193, 200 (1985). To determine whether an act is "judicial" the Court must look to "the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978).

Defendant Martinez fails to convince the Court that quasi-judicial immunity should be extended to her. She does not set forth any argument or elaborate as to why her actions, as pleaded in the FAC, are "functionally comparable to those of judges." *See Antoine*, 508 U.S. at 436. Instead, accepting as true all well-pleaded facts in the FAC, the Court is inclined to find that her actions, resulting in the allegedly unlawful retention of bail, were purely ministerial in function. Therefore, Defendant Martinez likely exercised no discretion in the performance of her duties similar to the discretion exercised by judges. *See Warren v. Naugle*, No. 18-4921, 2019 WL 6682147, at *4 (E.D. Pa. Dec. 6, 2019) (finding court clerk's actions purely ministerial in function and therefore non-discretionary).

This is not a situation where Defendant Martinez, acting in her role as prothonotary/clerk of court, performed any functions normally reserved for a judge such as issuing an opinion or "an order releasing a court record to the public." *Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 770 (3d Cir. 2000). Rather, just as numerous courts have held that "[q]uasi-judicial immunity does not extend to a court employee's performance of ministerial or non-discretionary tasks, such as docketing of filings," the act of retaining bail money to cover court costs appears to be a non-discretionary function that is not entitled to quasi-judicial immunity. *Walton*, 2007 WL

4615960, at *3 (citing *Tucker v. I'Jama*, 173 F. App'x 970, 971-72 (3d Cir. 2006) (denying immunity to court clerk due to non-discretionary duty to docket all papers presented for filing or to notify the filer of a deficiency)); *see also McKnight v. Baker*, 415 F. Supp. 2d 559, 563 (E.D. Pa. 2006) (denying immunity to clerk of family court and director of case processing due to their non-discretionary duties); *compare Schneller v. Prothonotary of Montgomery Cty.*, No. 1316 C.D., 2017 WL 3995911, at *6 n.10 (Pa. Commw. Ct. Sept. 12, 2017) ("To the extent Schneller could be deemed to have advanced constitutional tort law claims under Section 1983 . . . we conclude that they are barred by the doctrine of quasi-judicial immunity because the [p]rothonotary's refusal to file the notice of appeal was clearly done . . . pursuant to the trial court's order[.]").

Accordingly, Defendant Martinez cannot, at this time, be characterized as a "quasi-judicial" official and, therefore, is not entitled to "quasi-judicial" immunity from liability. The Court notes, however, that discovery may cast a new light on whether Defendant Martinez's actions were discretionary or ministerial in nature, and, therefore, the Court will deny Defendants' Motion on the grounds of quasi-judicial immunity without prejudice to Defendant Martinez's right to reassert this defense in a motion for summary judgment based on a more fully developed record.

### C. Failure to State A Claim

Next, Defendants move to dismiss all six of Plaintiff's claims for failure to state a claim. (Mot. at 10-20.) The Court addresses each claim in turn.[7]

1. *Fourteenth Amendment—Procedural Due Process*

Plaintiff maintains that "Defendants took the Plaintiff's money to pay the court costs without providing to persons in the Plaintiff's circumstances a meaningful opportunity to be heard regarding the assessment of the costs" and because "the Plaintiff's interest in regaining his money is significant, the risk of an erroneous deprivation great, and the governments interest in retaining the money nil, the Due Process Clause of the Fourteenth Amendment . . . required the Defendants to provide some form of process to protect the Plaintiff's property interest in his money, and failure to do so violated the Plaintiff's right to procedural [d]ue [p]rocess." (FAC ¶¶ 56, 61.)

The Fourteenth Amendment forbids state actors from depriving persons of life, liberty or property without due process of law. U.S. CONST. amend. XIV, § 1; *see also Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006).[8] "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, or property' is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (quoting *Parratt v. Taylor*, 451

---

[7] Because all constitutional claims against the individual Defendants are subject to dismissal, this analysis pertains to the sufficiency of the constitutional claims only as to Defendant Delaware County.

[8] Procedural due process claims are governed by the standard first enunciated in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Under that standard, a court is to weigh three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used" and the value of "additional or substitute procedural safeguards"; and (3) the governmental interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Id.*

U.S. 527, 537 (1981)).  Here, Defendants do not contest that Plaintiff has properly alleged the

first prong of his due process claim, and thus the only question presented is whether Plaintiff's

bail money was improperly retained to cover court costs without adequate procedural safeguards.

*See Higgins v. Beyer*, 293 F.3d 683, 693 (3d Cir. 2002) (finding that there is no dispute that

prisoners have a protected property interest in the funds held in prison account, and, therefore,

they cannot be deprived of this property without due process of law); *see also McKeithan v.*

*Beard*, 322 F. App'x 194, 198 (3d Cir. 2009) (noting that inmate has a "protected property

interest in the funds in his prison account," and that he therefore "has properly alleged the first

prong of the due process test, and the only question is whether the deduction of co-payments

occurred without adequate procedural safeguards").

Defendants contend that "[w]here there has been [an] intentional or negligent deprivation

of property, in order to pursue an action under § 1983, [a] plaintiff must have no adequate post

deprivation process in the state system."  (Mot. at 12.)  Defendants further argue that adequate

post-deprivation remedies were available, and because "Plaintiff has not requested return of the

withheld fund through any process available . . . Plaintiff fails to present a viable procedural due

process claim."  (*Id*. at 13.)  Plaintiff counters that "the requirement that Plaintiff avail himself of

adequate state law remedies only applies . . . where it would be impractical or impossible for the

governmental entity to provide pre-deprivation process, and does not apply to those cases where

the deprivation was the result of a governmental procedure, custom or usage."  (Opp. at 22.)

Plaintiff further contends that "the deprivation of Plaintiff's property was the result of Delaware

Count[y's] policy, practice and/or custom, and not some random and [un]authorized act of [a]

single employee, and it clearly would have been practical for the state to provide some

meaningful process."  (*Id*. at 23.)

The Court finds that Plaintiff more accurately characterizes the contours of the *Parratt/Hudson* doctrine. (*See* Opp. at 17, noting "the *Mathews* line of cases, and not the *Parratt[/Hudson]* line of cases applies to Plaintiff's [p]rocedural [d]ue [p]rocess [c]laim, and under that line of cases, the Plaintiff was entitled to pre-deprivation notice and an opportunity to be heard" (internal citations omitted).) The *Parratt/Hudson* doctrine dictates that a state actor's random and unauthorized deprivation of a plaintiff's property does not violate procedural due process rights unless the State fails to provide an adequate post-deprivation remedy. *See Parratt*, 451 U.S. at 529; *see also Hudson v. Palmer*, 468 U.S. 517, 529 (1984); *Burns v. Pa. Dept. of Corr.*, 642 F.3d 163, 172 (3d Cir. 2011) ("*Parratt* and *Hudson* only address post-deprivation remedies of unauthorized or unintentional deprivations of property.").[9] Reasoning that states cannot predict and therefore cannot safeguard against random and unauthorized deprivations through pre-deprivation process, the Supreme Court held that adequate post-deprivation remedies, such as tort remedies, are constitutionally sufficient. *See Zinermon*, 494 U.S. at 115 (explaining that "*Parratt* and *Hudson* represent a special case of the general *Mathews* analysis, in which post-deprivation tort remedies are all the process that is due simply because they are the

---

[9] *Parratt* concerned a state prisoner's § 1983 claim that prison officials, who had negligently lost materials he had ordered by mail, had deprived him of his property without due process of law. *See Parratt*, 451 U.S. at 540. The Supreme Court found that, although the prisoner had been deprived of property within the meaning of the Fourteenth Amendment due process clause, the State's post-deprivation tort remedy (in which he could recover the value of the materials) provided the process that was due. *Id*. at 535-37. Where the loss was caused by some random and unauthorized conduct, the Supreme Court noted that "the loss is not a result of some established state procedure and the State cannot predict precisely when the loss will occur. It is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place." *Id*. at 541. Thus, *Parratt* held that "the alleged loss, even though negligently caused, amounted to a deprivation." *Id*. at 536-37. *Hudson* extended *Parratt* to an intentional deprivation of property. *See Hudson*, 468 U.S. at 536. In *Hudson*, a prisoner alleged that a guard deliberately destroyed his property during a search of his cell. *Id*. at 520-22. As in *Parratt*, the prisoner could be compensated through a tort remedy. *Id*. at 534-35. Thus, because "the state official was not acting pursuant to any established state procedure," the Supreme Court found that the State was not "in a position to provide for pre-deprivation process." *Id*. at 533 ("The State can no more than anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct.").

only remedies the state can be expected to provide.").  In fashioning limits on the scope of this

doctrine, the Supreme Court has observed that state officials are barred from characterizing their

conduct as "random and unauthorized" if the State had "delegated to them the power and

authority to effect the very deprivation complained of."  *Zinermon*, 494 U.S. at 138; *see also*

*Higgins*, 293 F.3d at 694 (requiring pre-deprivation procedures where the deprivation was

pursuant to "an established state procedure").

      Applying these principles here, the Court finds that the *Parratt/Hudson* doctrine does not

apply.  Plaintiff alleges that Defendants retained bail money to pay court costs without first

providing him pre-deprivation notice and a hearing.  (*See* FAC ¶ 56.)  Plaintiff's allegations do

not suggest that his bail money was seized as a result of a random, negligent, or unauthorized act

by Defendants.  Rather, Plaintiff alleges that Defendant Delaware County "adopted an

unconstitutional policy, practice and/or custom to retain the bail money of persons whose

criminal charges were dismissed," and that the individual Defendants acted pursuant to that

policy, practice and/or custom when they "retained bail money to cover certain court costs" and

when they "failed to provide . . . any procedure to challenge the retention of the bail money[.]"

(*Id*. ¶¶ 31-32, 62.)  In other words, the individual Defendants were acting under the authority of

an established county procedure or policy.  Thus, the Court finds under *Zinermon* that Plaintiff

was entitled to at least some form of pre-deprivation notice and some means—even if informal—

to object before Defendants retained a portion of his bail money to cover court costs.  *See*

*Montanez v. Sec'y of Pa. Dept. of Corr.*, 773 F.3d 472, 486 (3d Cir. 2014) (holding that due

process required the Pennsylvania Department of Corrections (DOC) to afford pre-deprivation

notice of a prisoner's total monetary liability to the Commonwealth, the terms of the DOC's

policy regarding deductions from prisoner accounts, and some means, even if informal, "for

inmates to object to potential errors in the deduction process" before the first deduction occurs);

*accord Higgins*, 293 F.3d at 694; *see also Bundy v. Wetzel*, 184 A.3d 551, 228-59 (Pa. 2018)

(noting that "to comply with due process, the Department must, prior to the first deduction: (a)

inform the inmate of the total amount of his financial liability as reflected in his sentencing

order, as well as the Department's policy concerning the rate at which funds will be deducted

from his account and which funds are subject to deduction; and (b) give the inmate a reasonable

opportunity to object to the application of the Department's policy to his account. These

measures . . . are indicated pursuant to the balancing assessment prescribed by the Supreme

Court in *Mathews*") (internal citations omitted).[10]  Accordingly, the Court declines to dismiss

Plaintiff's Fourteenth Amendment procedural due process claim.

### 2. *Fourteenth Amendment—Substantive Due Process*

Defendants maintain that the FAC fails to allege a violation of Plaintiff's substantive due

process rights.  Plaintiff alleges that "[t]he Defendants['] deliberate decision to retain the

Plaintiff's bail money to pay for the costs of the prosecution was a clear abuse of governmental

power that deprived the Plaintiff of his fundamental interest in property in violation of the

---

[10] Although the case before the Court presents a different set of facts from *Montanez*—namely, Plaintiff
was found not guilty (with some criminal charges dismissed) and the funds at issue involve bail money,
as opposed to a convicted criminal challenging deductions from his inmate account—the Court still finds
the reasoning in *Montanez* persuasive as to the feasibility of pre-deprivation procedures.  *See Montanez*,
773 F.3d at 484-85.  The *Montanez* Court stated the following as to pre-deprivation procedures:
"Requiring that the DOC provide pre-deprivation process need not be administratively burdensome.
Other jurisdictions have been able to implement pre-deprivation process in similar circumstances.  The
State of Iowa, which requires nearly all of its criminal offenders to pay restitution while incarcerated,
requires that prison administrators provide 'written notice of the amount of the deduction . . . to the
inmate, who shall have five days after receipt of the notice to submit in writing any and all objections to
the deduction.'  Iowa Code § 904.702(1).  In Ohio, prison administrators must provide 'notice to the
inmate of the debt and its intent to seize money from the inmate's account,' 'inform the inmate of a right
to claim exemptions,' and provide the inmate with 'an opportunity to assert any exemption or defense'
before any money may be withdrawn from the account.  Ohio Admin. Code 5120-5-03(C).  In sum,
considering the factors required by *Mathews*, the government's interest in collecting restitution, fines, and
other costs from convicted criminals does not overcome the default requirement that inmates be provided
with process before being deprived funds in their inmate accounts."  *Id.*

Plaintiff's rights under the Substantive Due Process Clause." (FAC ¶ 74.) And further, "Defendants['] decision to retain the Plaintiff's bail money to cover court costs, when the Defendants knew that . . . [such] retention . . . violated Pennsylvania law and [the United States] Constitution, was arbitrary and capricious, and shocks the conscience." (*Id.* ¶ 72.)

As noted above, the Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law . . ." U.S. CONST. amend. XIV. The substantive due process clause is a "component of the [Fourteenth Amendment] that protects individual liberty [and property] against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). However, "[t]he history of substantive due process counsels caution and restraint[,]" and "[e]ach new claim to [substantive due process] protection must be considered against a background of constitutional purposes, as they have been rationally perceived and historically developed." *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229 (1985).

To establish a substantive due process claim, "'a plaintiff must prove [(1)] the particular interest at issue is protected by the substantive due process clause and [(2)] the government's deprivation of that protected interest shocks the conscience.'" *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 190 (3d Cir. 2009) (quoting *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008)). As to this claim, the only issue specifically contested by Defendants is whether the Plaintiff sufficiently alleges conscience-shocking behavior, as necessary to maintain a substantive due process claim. (*See* Mot. at 14.)

The "exact degree of wrongfulness to reach the 'conscience-shocking' level depends upon the circumstances of a particular case." *Vargas v. City of Phila.*, 783 F.3d 962, 973 (3d

Cir. 2015) (citing *Miller v. City of Phila.*, 174 F.3d 368, 375 (3d Cir. 1999)). Courts must look at whether "the behavior of the government officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). Thus, in this Court's view, conscience-shocking behavior falls on the far side of the culpability spectrum.

Retaining a portion of bail money to cover court costs without a hearing before such retention does not "shock the conscience" of this Court. *See Taylor v. R.I. Dep't of Corr.*, 908 F. Supp. 2d 92, 107 (D. R.I. 1995) (no substantive due process violation based on deduction from inmate account for unpaid supervision fees), *rev'd on other grounds*, 101 F.3d 780, 783 (1st Cir. 1996); *see also Anderson v. Kline*, No. 4-3432, 2005 WL 327148, at *4 (D. Kan. Feb. 10, 2005) (finding the deduction of outstanding fees and fines from an inmate trust account without a hearing before each deduction did not "shock the conscience"); *compare Rochin v. Cal.*, 342 U.S. 165, 172 (1952) (invasion of one's body, such as forcibly pumping suspect's stomach, will "shock the conscience"). Accordingly, the Court dismisses Plaintiff's substantive due process claim.

3.  *Fifth Amendment—Takings Clause and Eighth Amendment—Excessive Fines Clause*

Defendants set forth substantially identical arguments in support of their motion to dismiss Plaintiff's Fifth and Eighth Amendment claims. Thus, the Court will address these claims together. Defendants contend that they did not intend to retain the bail money or impose a fine on Plaintiff, and, therefore, the retention of bail money to cover court costs cannot be construed as a taking under the Fifth Amendment, or a punishment/excessive fine under the Eighth Amendment. (Mot. at 14.)[11] In other words, Defendants suggest that this was a one-time

---

[11] Specifically, as to the Fifth Amendment claim, Defendants maintain that "[t]he claim fails as . . . the costs were not intended to be imposed upon him and the inadvertent action or inaction resulting in his not

mistake, and, therefore, cannot be construed as a violation of Plaintiff's Fifth and Eighth

Amendment rights.

It appears to the Court that this is a disputed issue, as a review of the FAC reveals that

Plaintiff has not alleged that Defendants' actions were inadvertent or a one-time mistake, but

instead constitute intentional conduct that was imposed on every putative class member. (*See*

FAC ¶¶ 13, 18, 51, 96.) At this stage of the proceedings, the Court will not consider Defendants'

"inadvertent mistake" defense as it would require the Court to focus on the substantive merits of

the claim and consider matters outside of the pleadings, as opposed to strictly analyzing the legal

sufficiency of Plaintiff's allegations. *See Frompovicz v. Niagara Bottling, LLC*, 313 F. Supp. 3d

603, 608 n.3 (E.D. Pa. 2018) (limiting the court's review to the face of the complaint (citing

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)));

*see also Fagin v. Gilmartin*, 432 F.3d 276, 284 n.1 (3d Cir. 2005) ("'[T]he existence of a defense

does not undercut the adequacy of the claim' on a Rule 12(b)(6) motion to dismiss." (quoting

*Deckard v. Gen. Motors Corp.*, 307 F.3d 556, 560 (7th Cir. 2002))); *see also Alston v. Parker*,

363 F.3d 229, 233 n.6 (3d Cir. 2004) ("If more facts are necessary to resolve or clarify the

disputed issues, the parties may avail themselves of the civil discovery mechanisms under the

Federal Rules."). Accordingly, at this time, the Court declines to dismiss Plaintiff's Fifth and

Eighth Amendment claims.

### 4. *Monell Claim Against Delaware County*

Defendant Delaware County challenges whether Plaintiff has adequately alleged

municipal liability. (Mot. at 15-18.) Plaintiff's FAC asserts that Delaware County "has

---

receiving a refund cannot be construed as a taking under such circumstances." (Mot. at 14.) As to the
Eighth Amendment claim, Defendants contend that "[t]he claim fails as a claim for excessive fines as the
fines . . . were not intended to be imposed upon him and the inadvertent action or inaction resulting in his
not receiving a refund . . . cannot be construed as designed as a punishment." (*Id.*)

maintained for many years an unconstitutional policy, practice and/or custom of retaining bail money from persons found not guilty/had criminal charges dismissed or withdrawn [] in order to pay certain costs of the prosecution, when Pennsylvania law and [the] Due Process Clause of the United States Constitution clearly prohibited such policy, practice and/or custom." (FAC ¶ 90.) Delaware County claims that the issue in this case "involves Court of Common Pleas procedures and not any County policy or practice that resulted in the fees not being returned to the Plaintiff" and that the Plaintiff fails to "articulate any viable County policy or custom" as it is "clearly . . . a Court function at issue." (Mot. at 14.)

The liability of a municipality—in this case, Delaware County—under 42 U.S.C. § 1983 is governed by *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Under *Monell*, a municipal entity may be liable under 42 U.S.C. § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those who edicts or acts may fairly be said to represent official policy" deprives a citizen of constitutional rights." *Id.* at 694; *see also Reitz v. Cty. of Bucks*, 125 F.3d 139, 144 (3d Cir. 1997). Liability exists when "'there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2001) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

After review of the FAC, the Court finds that Plaintiff adequately alleges that the actions against him were the result of a municipal policy or custom. Among numerous other allegations in his thirty-two page complaint, Plaintiff alleges that:

> Because the criminal charges against the Plaintiff were dismissed, Defendant, Delaware County, had a statutory duty to pay the court costs, and to ensure by proper policy implementation, oversight, and training that its statutory duty to pay the court costs under these circumstances was being fulfilled. Notwithstanding Defendant, Delaware County's statutory duty to pay the court costs under these

> circumstances, as a matter of policy, practice and/or custom, Defendant, Delaware County . . . retained, or caused to be retained, bail money to cover certain court costs of all persons in Delaware County who posted bail regardless of whether that person was convicted of a crime or, as in this case, had the criminal charges dismissed or was found not guilty. Notwithstanding Defendant, Delaware County's statutory duty to pay the court costs under these circumstances, as a matter of policy, practice and/or custom, Defendant, Delaware County . . . failed to provide persons who have had their criminal charges dismissed, or were found not guilty, any procedure to challenge the retention of the bail money that was deposited in an account maintained by the Delaware County Office of Judicial Support and/or to seek the return of wrongfully retained money.

(FAC ¶¶ 30-32.)

At this stage in the proceedings, accepting these facts as true, the Court agrees with Plaintiff that these allegations are enough to implicate *Monell* liability. *See Rodriguez v. City of Phila.*, No. 14-7362, 2015 WL 4461785, at *4 (E.D. Pa. July 21, 2015) ("A plaintiff is not obligated to plead with special particularity the exact policies and practices that were in place, prior to taking any discovery into the alleged policies, and explain exactly how these precisely alleged policies caused or contributed to [an individual's] injuries."). As such, the Court concludes that Plaintiff has plausibly alleged a custom or policy at this stage of the proceedings.

5. *State Law Conversion Claim*

In their Motion, Defendants assert that "as to the [c]ourt []defendants sued here as individuals, the claims are barred by sovereign immunity as a matter of law[.]" (Mot. at 19.)[12]

The Court disagrees. The Eleventh Amendment does not bar suits against state officials sued in their "personal" or "individual capacity." *Foster v. McLaughlin*, 203 F. Supp. 3d 483,

_____

[12] Defendants also contend that the conversion claim against Delaware County is barred by the Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. Cons. Stat. Ann. §§ 8541-8542. (Mot. at 19-20.) In his Opposition, Plaintiff "concedes that his [c]onversion claim against Delaware County is barred by the PSTCA." (Opp. at 37.) Accordingly, the Court dismisses this claim as to Defendant Delaware County.

488 (E.D. Pa. 2016).  As noted earlier, states have Eleventh Amendment immunity from suit by private parties in federal court.  *Tennessee v. Lane*, 541 U.S. 509, 517 (2004).  This immunity extends to state agencies and departments as well as state officials sued in their official capacities.  *Foster*, 203 F. Supp. 3d at 487.  In such instances, the doctrine applies because the state is the true party in interest.  *Id.*  "For this reason, and by contrast, suits against state officials in their personal or individual capacity are not barred by the Eleventh Amendment."  *Id.*

Plaintiff sues Defendant Martinez in her "individual" and "official" capacities.  (*See* FAC ¶ 5.)  To the extent Plaintiff sues Defendant Martinez for damages for actions taken in her "official capacity," the Court orders the dismissal of those claims.  *See* Section III.A, *supra*.  But the Eleventh Amendment does not bar claims against Defendant Martinez in her "individual capacity."  *See Foster*, 203 F. Supp. 3d at 488.  Accordingly, the Court declines to dismiss the conversion claim as asserted against Defendant Martinez in her individual capacity.

### D.  Class Allegations

Defendants seek to dismiss "the class action request[.]"  (Mot. at 23.)  Defendants maintain "there is no basis for seeking class certification[,]" and argue that "Plaintiff has failed to meet the requirements of Rule 23(a) and (b) based upon the averments in . . . the [FAC]."  (*Id.*)  To support this contention, Defendants suggest "that Plaintiff is on a fishing expedition and has not made any showing concerning others who are alleged to have sustained the same injury[.]"  (*Id.*)

The Court construes Defendants' plea to dismiss "the class action request" as a motion to strike class allegations.  (*Id.*); *see* Fed. R. Civ. P. 12(f); *see also Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 615 (E.D. Pa. 2015) (While a plaintiff in a putative class action "may generally conduct discovery relevant to class certification," Rules 12 and 23

allow courts to strike class allegations at the pleading stage "if class treatment is evidently inappropriate from the face of the complaint.").  Motions to strike class allegations are generally disfavored, particularly where the arguments against the class claims would benefit from discovery or would otherwise be more appropriate at the motion for class certification stage.  *See Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 422-23 (E.D. Pa. 2016) (denying as premature motion to strike class allegations prior to discovery); *see also Landsman & Funk PC v. Skinder-Strauss Assoc.*, 640 F.3d 72, 93 n.30 (3d Cir. 2011) (acknowledging that in rare instances, where the complaint shows that the requirements to maintain a class action cannot be satisfied, a motion to strike will be granted).

The extraordinarily cautionary language of *Landsman* indicates that only an abundantly clear failure to meet one of the Rule 23 class action requirements justifies granting a 12(f) motion so early in the proceedings.  *Landsman*, 640 F.3d at 93.  *Landsman* includes a discussion of *Goodrich Mgmt. Corp. v. Afgo Mech. Servs., Inc.*, No. 9-43, 2009 WL 2602200, at *1 (D.N.J. Aug. 24, 2009), a case in which the district court erroneously concluded that the typicality and predominance factors for class certification were not met.  *Id*.  The *Landsman* Court noted that the lower court prematurely determined the class certification issue on a motion to dismiss.  *Id*. In determining whether the requirements of Rule 23 have been met, the *Landsman* Court further emphasized that a "rigorous analysis," is typically necessary.  *Id*.  "In most cases, some level of discovery is essential to such an evaluation" to ensure that "the class action process should be able to 'play out' according to the directives of Rule 23."  *Id*. (quoting *Weiss v. Regal Collections*, 385 F.3d 337, 347-48 (3d Cir. 2004)).

Here, Defendants have yet to file their respective answers, and discovery has not yet commenced.  The Court, therefore, finds that it is premature to decide the merits of any

purported class before at least some discovery has been conducted. In fact, in his Opposition Plaintiff submits that "discovery will establish, the class in this case will be in the thousands, if not more, because it is clear that this practice has been going on a long time." (Opp. at 44.) Further, the Court finds that this is not the exceptional case "when no amount of discovery or time will allow plaintiffs to resolve deficiencies in class definitions under Rule 23." *Zarichny*, 80 F. Supp. 3d at 615. Plaintiff may take discovery to determine the extent to which the putative class members' bail money was retained pursuant to an unlawful policy or practice. Only after the creation of a factual record will the Court be able to undertake the requisite "rigorous analysis" into whether the prerequisites of Rule 23 have been met. *See Landsman*, 640 F.3d at 93.

## IV.    CONCLUSION

For the reasons discussed above, the Court will grant in part and deny in part Defendants' Motion to Dismiss. An appropriate Order will follow.


**IT IS SO ORDERED.**


                                        **BY THE COURT:**

                                        /s/ Judge John Milton Younge
                                        _____
                                        **Judge John Milton Younge**