UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TONY BURFORD**, | : | |
| | : | Case No.   19-cv-0577-JMY |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| **DELAWARE COUNTY,** | : | |
| **PENNSYLVANIA, ET AL.**, | : | |
| | : | |
| *Defendant* | : | |

# MEMORANDUM

This controversy stems from a former criminal defendant's allegation, that a local government, by and through its implementation of bail practices, have financially exploited the criminally accused even when ultimately found not guilty at trial or where charges have been withdrawn. The bail practice that is the center of controversy is the retention by local governments of so-called "fees" to allegedly defray the cost of bail administration even when criminal defendants are acquitted of a crime. The claim is that the retention of these fees may amount to an unconscionable source of revenue generation by the government where the innocent and indigent are forced to pay charges that, in effect, operate as taxes and fines for defending their innocence. Despite Plaintiff's allegations, and ample opportunities afforded by this Court, at the end of discovery, Plaintiff has failed to offer any proof that it was Defendants' policy or practice to improperly retain bail money.  As much as Plaintiff's counsel tries to make this case fit the narrative of exploitive, bail practices, this is not one of them.

Now before the Court is Defendants' Motion for Summary Judgment.  Both Plaintiff and the Defendants agree that Plaintiff – who was charged but never convicted of a crime – was entitled to a bail refund in the amount of $3,600, instead of the $2,483.20 he received, and that $1,116.80

from this refund was erroneously deducted. Defendants argue this merely reflected an error, attributable to a clerical mistake that could have easily been rectified with proper notice, whereas Plaintiff argues that Defendants' conduct amounts to Fourteenth Amendment, Eighth Amendment and Fifth Amendment constitutional violations as well as common law conversion that warrants class certification.

On Defendants' Motion to Dismiss, this Court accepted as true – and indeed was required to accept as true – Plaintiffs' allegations that the erroneous calculation of Plaintiff's bail refund "was the result of Delaware Count[y's] policy, practice and/or custom, and not some random and [un]authorized act of [a] single employee, and it clearly would have been practical for the state to provide some meaningful process." (ECF No. 28 at 19.) While Plaintiff's allegations were sufficient grounds to deny Defendants' Motion to Dismiss as to Plaintiff's procedural due process claims, after three years of litigation, Plaintiff has failed to show any evidence that the erroneous charges were the result of anything more than a random and unauthorized, clerical mistake. A government employees' failure to abide by the law and government procedures due to an instance of isolated human error does not amount to a procedural due process violation where, as here, there were ample and adequate opportunities for the mistake to be challenged and corrected. Therefore, the Court finds that there is insufficient evidence from which a reasonable jury could find that Defendants' actions amounted to a constitutional violation, and grants summary judgment in Defendants' favor. Because the Court no longer has original jurisdiction over any federal-law claim, the Court also declines to exercise supplemental jurisdiction over Plaintiff's state law conversion claim.

I. **BACKGROUND**

Plaintiff Tony Burford was arrested on January 15, 2016. An information was filed against him in the Delaware County Court of Common Pleas charging Plaintiff with one or more felonies. (ECF No. 62-2 at 30). Bail was initially set at $100,000 and then subsequently reduced to $60,000 for which Plaintiff posted 10% at $6,000. By March 1, 2017 all charges against Plaintiff were either withdrawn, dismissed or he was found not guilty. (ECF No. 62-2 at 25.) Despite not being convicted of any crime, Plaintiff was assessed $3,533.05 in costs which consisted of $2,400 for a "Bail Handling Percent (Delaware)" along with various charges in the amount of $1,133.05. (ECF No. 62-2 at 33.) Thus, of the $6,000 Plaintiff posted bail for, he was offered less than 50% back despite not being convicted of any offense.

Plaintiff does not dispute the $2,400 "Bail Handling Percent." Instead, at issue in this case, is $1,116.80 that both parties agree was erroneously deducted from Plaintiff's bail refund which included $811 for "Constable (Delaware)," $5 for "Constable Education Training Act," $300 for "Darby Boro PD PCF," and $16.25 for "Certification (Delaware)" (collectively "Constable and Live Scan Charges").[1] Typically, once a defendant is charged with a crime, a cost clerk puts an entry on the docket for Constable and Live Scan Charges, but bail money is not supposed to be used to pay these charges, as such charges should only be assessed if a criminal defendant is convicted at trial and sentenced. In other words, the cost clerk puts an entry on the docket that operates like an invoice for Constable and Live Scan Charges, but criminal defendants are not required to pay these charges if they are ultimately acquitted. Once a Defendant is found not guilty or charges are dismissed or withdrawn, the court clerk is supposed to bring the cost clerk the case

---

[1] Plaintiff received a check for his bail refund in the amount of $2,483.20. (ECF No. 64-1 at 390.) Though the Constable and Live Scan Charges equate to $1,133.05, the amount of bail refund due of $3,600 minus the amount received of $2,483.20 equals $1,116.80.

file, who is then supposed to adjust the Constable and Live Scan Charges on the docket to zero so that a defendant is not assessed these charges when they receive a bail refund. (*Id* at 22.) Indeed, the law requires that in cases where criminal charges are dismissed, Delaware County, the local government must pay these fees instead. *See* 44 Pa. C.S.A. § 7161(g)(16).

Unfortunately, what was supposed to occur did not happen in this case. In June of 2017, Plaintiff received a check dated April 25, 2017 in the mail with an incorrect bail refund of $2,483.20, instead of the $3,600 that was due. (ECF No. 1 at 10; ECF No. 64-1 at 390; ECF No. 65 at 1.) Although Susan Porreca, the cost clerk for Office of Judicial Support does not know why Plaintiff received an incorrect bail refund, she testified that someone else came to her department in 2017 to inquire why they incurred certain costs when their case was dismissed. This led her and Angela Martinez, who supervises the issuance of bail refund checks, to investigate. (ECF No. 62-1 at 24.) Upon review, it was discovered that the court clerk had entered the cost information into the docket, but instead of giving the file to Ms. Porreca to reduce the costs to zero as required, the file was sent directly to the file room. (*Id.* at 25.). Upon learning this information, Ms. Porreca immediately reduced that defendant's costs to zero and Ms. Martinez reiterated to the court clerks that the files for all criminal defendants who had their cases dismissed, withdrawn or found not guilty had to go to Ms. Porreca before taking them to the file room. (*Id.*)

Ms. Martinez, a named Defendant and the First Deputy Clerk of Court of Delaware County, is responsible for effectuating the policies of the Office of Judicial Support. She testified that other than Plaintiff, she was not aware of any other individual defendants who were found not guilty and had Constable and Live Scan Charges deducted from their bail refund. (ECF No. 62-2 at 118.) She further testified that if a defendant ever raised an issue with a bail refund error – which did happen over the years she was there – it was corrected once brought to the attention of staff. (*Id.* at 118-

119.) Further, she is unaware of any bail error issue brought to the attention of the Office of Judicial Support in which it declined to give a defendant the money to which he or she was entitled where mistakes had been made. (*Id.*) Ms. Martinez stated that there is no policy or practice by the Office of Judicial Support to take out Constable and Live Scan Charges for individuals found not guilty. (*Id.*) Ms. Johnna Lee Marie Higgins, who works in customer service at the criminal counter filings, testified that three other criminal case dockets she was shown list incorrect fees on the docket. However, unlike Plaintiff, there is no evidence that these defendants had bail money incorrectly withheld from their refunds when they were found not guilty, or the case was withdrawn or dismissed. (ECF No. 62-1 at 19.) Ms. Eileen Troutman, a data clerk, testified that she has never received complaints about costs being taken out of a criminal defendant's bail when the charges are dismissed by the prosecution. (*Id.* at 20.) Ms. Porreca testified that other than Plaintiff and one incident in 2017 that was corrected, she was unaware of any other instance in which Constable and Live Scan Charges were not reduced to zero when defendant was found not guilty, or charges were dismissed or withdrawn. (*Id.* at 25.) She further testified that there is no policy or procedure or any intentional conduct that led to the incorrect retention of a portion of Plaintiff's bail money. (*Id.* at 29.)

Following receipt of the bail refund check, Plaintiff called the Court Financial Service's number listed on the check and inquired as to why he did not receive his entire bail money back. (*Id.*) Plaintiff did not inquire specifically as to the Constable and Live Scan Charges, but no one in the Court Financial Services office made any corrections at that time to the bail refund Plaintiff received. (*Id.*) Errors in bail refunds can be corrected simply by contacting the Office of Judicial Support and Ms. Martinez testified that she is not aware of any instance where they were alerted to an error which was not corrected. (ECF No. 62-1 at 11; ECF No. 62-2 at 119.) Plaintiff did not

inform any employee at the Office of Judicial Support – the office charged with overseeing that bail refund checks are correct – until Plaintiff brought this lawsuit. (ECF No. 65 at 29.) Once the Office of Judicial Support was informed as to the error in Plaintiff's bail refund check regarding the Constable and Live Scan Charges, Plaintiff was offered a check for the proper refund. (ECF No. 62-1 at 11.) He declined that check.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment where the movant shows that there is "no genuine dispute as to any material fact". Fed. R. Civ. P. 56(c). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Ideal Dairy Farms, Inc. v. John Labatt*, Ltd., 90 F.3d 737, 743 (3d Cir. 1996). The movant bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 264 F.3d 135, 145 (3d Cir. 2004). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson*, 477 U.S. at 248). A factual dispute is "material" if it might well affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248).

A court must view the facts and draw all reasonable inferences in the non-moving party's favor. *See In re Flat Glass Antitrust Litig.*, 285 F.3d 350, 357 (3d Cir. 2004); *see also Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) ("In evaluating the evidence, we are required to view the inferences to be drawn from the underlying facts in the light most favorable to the party

opposing the motion.") (internal quotation marks and citation omitted).  Nonetheless, a court need not credit "[u]nsupported assertions, conclusory allegations, or mere suspicions." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

For claims or defenses where the movant bears the burden of proof at trial, a movant "must show that it has produced enough evidence to support the findings of fact necessary to win." *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 237 (3d Cir. 2007).  For claims or defenses that the non-movant bears the burden of proof at trial, a movant can simply point out "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  Once the movant has met its burden of proof, the opposing party "must point to actual evidence in the record on which a jury could decide an issue of fact its way." *El*, 479 F.3d at 238.

In order to survive summary judgment, the party opposing summary judgment must raise "more than a mere scintilla of evidence in its favor." *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989).  The party opposing summary judgment must cite specific evidence in the record and may not "rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (describing this phase of summary judgment as "put up or shut up time for the non-moving party").  Reliance upon "conclusory, self-serving affidavits [is] insufficient to withstand a motion for summary judgment." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009); *see also Betts v. New Castle Dev. Ctr.,* 621 F.3d 249, 252 (2010).  In deciding a motion for summary judgment, the court is limited to determining if there is a genuine issue as to a material fact requiring resolution by the finder of fact at trial and does not weigh evidence or determine the truth of the matter. *See Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007).

III. DISCUSSION

      **a. Procedural Due Process– Defendants Delaware County and Angela Martinez**

Plaintiff brings a Section 1983 lawsuit claiming his Fourteenth Amendment, procedural due process rights were violated when Defendants retained Constable and Live Scan Charges from Plaintiff's bail refund without first providing notice and an opportunity to be heard. Plaintiff alleges he should have received pre-deprivation notice that if found not guilty, all bail money except the forty percent (40%) handling fee should be returned as well as advised of a formal or informal process for challenging charges before they are noted on the docket. (ECF No. 64 at 8.) Plaintiff does not challenge the 40% "Bail Handling Percent,"[2] but instead claims that because Plaintiff was never convicted of a crime, the accidental retention of Constable and Live Scan Charges is similar to the fines and fees the Supreme Court addressed in *Nelson v. Colorado*, 137 S. 1249 (2017) wherein it held these assessments must be returned to criminal defendants who have had their convictions reversed. In contrast, Defendants argue that the fees were erroneously

---

[2] In *Buckland v. Cty of Montgomery,* 812 F. 2d 146, 147 (3d Cir. 1987), the Third Circuit held that a 30% bail handling fee passed constitutional muster. Bail handing fees have generally been held to be constitutional as they are imposed on the guilty and innocent alike and are relationally related to a legitimate government interest in recouping the cost to pay for the bail system. *See, e.g. Schilb v. Kuebel,* 404 U.S. 357 (1971); *Broussard v. Parish of Orleans,* 318 F.3d 844 (5th Cir. 2003). However, the constitution is violated when a local government retains a defendant's conviction-related assessment where the defendant, whose conviction is overturned, must institute a civil proceeding that requires proof of "clear and convincing evidence." *Nelson v. Colorado*, 137 S. 1249 (2017) ("Absent conviction of a crime, since a criminal defendant is presumed innocent… the State[s]… [retention of] conviction-related assessments unless and until the prevailing defendant institutes a discrete civil proceeding and proves her innocence by clear and convincing evidence…offends the Fourteenth Amendment's guarantee of due process"); *see also United States v. Feely, 1 Brock*. (U.S.) 255, 259 (1813) ("The object of a recognizance is, not to enrich the treasury, but to combine the administration of criminal justice with the convenience of a person accused, but not proved to be guilty"). *Nelson*, however, did not address the situation before this Court of a local government employee making an unauthorized, clerical mistake that results in the improper retention of fees where there is no criminal conviction.

retained and were the result of a clerical mistake where there was an adequate process to rectify the discrepancy, and thus, there is no due process violation under the Supreme Court's decisions in *Parratt v. Taylor*, 451 U.S. 527, 537 (1981) and its progeny.

Section 1 of the Civil Rights Act of 1871, codified at 42 U.S.C. § 1983, creates a cause of action in the federal courts for constitutional claims cognizable under the Fourteenth Amendment. The Due Process Clause of the Fourteenth Amendment forbids state actors from depriving persons of life, liberty or property without due process of law. U.S. CONST. amend. XIV, § 1; *see also Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006).[3] The Supreme Court has adopted a two-step analysis to examine whether an individual's procedural due process rights have been violated. The first question asks whether there exists a liberty or property interest which has been interfered with by the State; the second question examines whether the procedures attendant upon that deprivation were constitutionally sufficient. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*); *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, or property' is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon*, 494 U.S. at 125 (quoting *Parratt v. Taylor*, 451 U.S. 527, 537 (1981)).

Since the parties agree that Plaintiff's bail refund constitutes a "property" interest, the issue is whether the Defendants' procedure is "constitutionally adequate" to prevent erroneous

---

[3] Both the Fifth Amendment and the Fourteenth Amendment contain due process guarantees providing that the government shall not deprive a person of "life, liberty, or property, without due process of law." *See* U.S. CONST. amend. V ("No person shall ... be deprived of life, liberty, or property, without due process of law ...."); *Id*. at amend. XIV, cl. 1. The Fifth Amendment applies to actions taken by the federal government, whereas the Fourteenth Amendment applies to actions taken by state governments.

deprivations. *Zinernom*, 494 U.S. at 126. Procedural due process usually requires affording a pre-deprivation process in the form of some notice and opportunity to be heard. *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971). The Supreme Court, however, has tempered this requirement by applying a flexible, three factor test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). The court weighs: the private interest that will be affected; the risk of erroneous deprivation of the interest through the procedures used and the probable value, if any of additional or substitute procedural safeguards; and, finally, the government's interest, including the functional, fiscal and administrative burden that the additional or substitute procedural requirements would entail. *Id.* at 335.

Under this test, a pre-deprivation process is not a requirement in every situation and a post-deprivation remedy can satisfy due process. In particular, a pre-deprivation procedure may not be required when the deprivation results from a "random and unauthorized act of a state employee." *Parratt v. Taylor*, 451 U.S. 527 (1981); *Hudson v. Palmer*, 468 U.S. 517 (1984). In this scenario, the state cannot predict when such an act will occur. Thus, the state's due process violation is not complete until it refuses to provide a suitable post-deprivation remedy, since the inability to predict the random and unauthorized act makes pre-deprivation procedures futile, impossible, or of negligible value in relation to the deprivation at issue. This is known as the *Parratt/Hudson* rule.

To illustrate, in *Parratt*, a prison employee negligently lost a hobby kit an inmate ordered by mail. In *Hudson*, 468 U.S. 517 (1984), a prison guard deliberately destroyed the plaintiff's personal property which included letters and legal materials. In both cases, the Supreme Court held that the prisoners had not been deprived of their property without due process because they could have utilized a state tort claim procedure to gain compensation for the loss. The Court reasoned that it was beyond the state's control to prevent a property loss resulting from a random, unauthorized

act that did not derive from any "established state procedure." *Parratt*, 468 U.S. at 541; *Hudson*, 468 U. S. at 532.  Critical to the holding in *Parratt/Hudson* is the notion that Section 1983 must be reserved to remedy only those deprivations which result from a state's conscious decision to ignore the protections in the Constitution and not be used to turn "every alleged injury which may have been inflicted by a state official acting under 'color of state law' into a violation of the Fourteenth Amendment under §1983."

Plaintiff devotes a significant portion of his briefing to arguing that the *Mathews* balancing test applies, and that Defendants' reliance on *Parratt/Hudson* is misplaced.[4]  The Court disagrees. On Plaintiff's Motion to Dismiss, the Court declined to hold that the *Parratt/Hudson* standard applied because it accepted as true, as required on a motion to dismiss standard, Plaintiff's allegations that the incorrect bail refund was the result of a policy, practice and custom and not an unauthorized, employee error. But Plaintiff has provided zero evidence that his improperly calculated bail refund was the result of anything more than an isolated, clerical mistake that violated official procedure.  The judge's clerk's failure to bring Plaintiff's case file to the cost clerk so that the Constable and Live Scan Charges could be adjusted, in negligent disregard of what the judge's clerk was required to do, is by definition, an unauthorized, random and unpredictable employee action under *Parratt/Hudson.*

Indeed, Plaintiff points to no evidence, beyond speculation and his own individual case. After three years of litigation and ample opportunities afforded by this Court, Plaintiff could not identify anyone other than himself who received a bail refund check for less than the amount they were

---

[4] Plaintiff appears to refer to the *Parratt/Hudson* line of decisions as an "exception" to the *Matthews* test, but according to the Supreme Court "Parratt is not an exception to the Matthews balancing test, but rather an application of that test…" *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982).

entitled to where Defendants improperly retained Constable and Live Scan Charges. Although deposition testimony identified three other criminal cases where erroneous costs appear on the docket, there is no evidence that these defendants failed to receive the full bail refund to which they were entitled. In addition to discovery, Plaintiff was permitted to advertise in local media and over the internet in order to locate other individuals who may have received bail refunds where Constable and Live Scan Charges were improperly deducted. (ECF No. 49.) It appears that Plaintiff was unable to locate any other individual from this advertising.

Nor has Plaintiff offered any support to his claim that the Office of Judicial Support informed him that it was customary to deduct Constable and Live Scan Charges from bail refunds when the plaintiff was acquitted or found not guilty. Instead, all Plaintiff has offered as evidence was that there was a practice by the judge's clerk to bring a case file to the cost clerk so that Constable and Live Scan Charges, which are noted on the docket prior to being assessed, may be adjusted to zero. This is not evidence of a policy or practice of improperly retaining a portion of a criminal defendant's bail refunds. Requiring a judge's clerk to bring a case file to the cost clerk so that Constable and Live Scan Charges may be adjusted to zero might be susceptible to human error, but this, alone, is not a procedural due process violation. After all "to err is human," as the famous poet Alexander Pope once said. And human error alone does not equate to a procedural due process violation as otherwise "federal suits might be brought for countless local mistakes by officials in administering the endless array of state laws and local ordinances." *See Herwins v. City of Revere*, 163 F.3d 15, 19 (1st Cir. 1998). Unlike on Defendant's Motion to Dismiss where this Court was required to accept as true Plaintiff's allegations that his erroneously calculated bail refund "was the result of Delaware Count[y's] policy, practice and/or custom, and not some

random and [un]authorized act of [a] single employee," Plaintiff may not defeat Defendant's Motion for Summary Judgment by simply relying on this unsupported and conclusory allegation.

Plaintiff cites to the cases in *Burns v. Pennsylvania Department of Corrections* (*Burns I*), 544 F.3d 279, 291 (3d Cir. 2008) and *Burns v. Pennsylvania Department of Corrections* (*Burns II*), 642 F.3d 163 (3rd Cir. 2011) for the proposition that the mere notation of Constable and Live Scan Charges on the docket prior to a conviction is a due process violation. First, Plaintiff mistakes the holding of *Burns I* by conflating the two elements required to establish a due process claim of first, whether Plaintiff has asserted a constitutionally protected interest in "life, or property" and second, whether the deprivation of such interest was without due process of law. The Third Circuit in *Burns I* held that "assessment of [a prisoner's] institutional [bank] account constituted the deprivation of a protected property interest for the purposes of procedural due process." 544 F.3d 279, 291 (3d Cir. 2008). In that case, an inmate brought a due process challenge against state corrections and prison officials who placed an assessment on the inmate's account at the conclusion of a misconduct proceeding where a hearing determined that the inmate had committed assault on another prisoner. The examiner assessed the inmate's account for medical expenses associated with the victim's condition. *Id.* The defendants argued that the assessment did not result in any deprivation of property because they took no action to seize any funds from the account. *Id.* The Third Circuit rejected this argument, reasoning that the assessment "constituted a threat of expropriation and thereby impaired his right to security in his inmate account." *Id.* at 281 n.2, 288. The Third Circuit explained that because there was a possibility of future seizure of funds, the account "possesses a lesser present day economic value than property not so encumbered." *Id.* at 289. The Third Circuit did not hold that the assessment was a due process violation, but instead

remanded the case to determine whether the disciplinary hearing that led to the assessment on the inmate's account satisfied procedural due process. *Id.*

Following the district court's determination on remand, on appeal, the Third Circuit in *Burns II* held that it was a violation of due process when the hearing officer who assessed the inmate's account failed to independently review a videotape recorded of the incident which may have supported the inmate's defense. *Id.* at 174 ("We therefore hold that an inmate's right to procedural due process is violated when a hearing examiner simply fails to view available evidence to determine its relevance and suitability for use at a disciplinary hearing."). Unlike *Burns II* where the inmate's account was assessed following a disciplinary hearing where potential exculpatory evidence was excluded pursuant to a state sanctioned procedure, in this case, the clerk whose mistake led to the incorrect notation on the docket was not following established policy.

Nor do any of the other cases Plaintiff cite support the proposition that *Parratt/Hudson* does not apply as they are highly distinguishable from the facts of this case. *See, e.g. Logan v. Zimmerman Brush Co.*, 455 U.S. 442 (1982) (State created procedural bar to presenting a claim on its merit violated due process). Rather, the error that occurred here was exactly the type of "random and unauthorized conduct" encompassed by *Parratt/Hudson* – A clerk simply made a mistake that the Defendants had no reason to predict. Both parties agree that the bail refund was erroneously calculated due to the judge clerk's failure to bring the Plaintiff's case file to the cost clerk who, in turn, failed to adjust Constable and Live Scan Charge noted on the docket to zero, but that does not remove the case from *Parratt-Hudson*; it instead establishes that this case fits firmly within *Parratt-Hudson*. That is the very kind of unanticipated mistake that is due to individual error, not induced by a statute.

Plaintiff incorrectly misconstrues the *Parrot/Hudson* line of cases as "only appl[ying] where pre-deprivation notice and a hearing would be impractical or impossible" and equates whether a procedure is "impractical," or not, with mere possibility. That is not the case. The question is not whether additional procedures could have avoided the clerical mistake or were possible – hindsight is always 20/20 and if we were to focus on this inquiry alone, our judicial system could become encumbered by a whole host of administrative requirements of little value that could bog down the courts. Rather, the inquiry looks to the variables in the *Matthews* equation and whether the value of any pre-deprivation procedures would be negligible and thus, impractical or impossible when assessing the deprivation at issue. For instance, in *Tillman v. Lebanon County Correction Facility*, 221 F.3d 410 (3d Cir. 2000) it was technically possible to have a pre-deprivation hearing before the prisoner's funds were assessed and confiscated but such a hearing would be of little value and thus, impractical when considering the *Matthew* factors as the procedures questioned involved "routine matters of accounting, with a low risk of error…[which] may be corrected through the prisoner's grievance program…" *Id.* at 422.

The same can be said here. Under Pennsylvania law, the court is required to pay constable fees and to do so in a relatively short period of time from fifteen to thirty days depending on the circumstances. *See* 44 Pa.C.S. § 7161. By statute, a constable is entitled to certain fees for their services, such as, but not limited to, providing courtroom security, transporting prisoners, and serving arrest warrants. *Id.* The government has an important state interest in collecting costs to defray Constable and Live Scan Charges it incurs, and to see that it is done in an organized fashion that can be properly accounted in a centralized location. Including a notation on the criminal docket for certain costs, such as the Constable and Live Scan Charges serves this purpose and allows the Office of Judicial Support to trace any fees due in one location in the event a criminal defendant

is convicted. By its very nature, the criminal docket may change from time to time and the docket states that "recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports." (ECF No. 64-1 at 369.)

Plaintiff does have an interest in receiving the $1,116.80 he was entitled to as part of his bail refund, and the Court does not minimize that interest, but looking at the magnitude of this deprivation when considering the other *Matthews* factors weighs against requiring additional pre-deprivation procedures. That Plaintiff cannot identify another individual who had Constable and Live Scan Charges improperly withheld from their bail refund illustrates that the Defendants' practice of having a judge's clerk give the file to the cost clerk to zero out these notations on the docket was an administrative act with a low risk of error. To require court administrators to adopt additional pre-deprivation, clerical procedures to prevent a risk that Plaintiff has not shown occurred to anyone else has the potential to inundate government, case administration with unnecessary, administrative hurdles.

Further, Pennsylvania law provides ample procedural rights that afford an opportunity to challenge the amount of bail refund issued and to root out human error. There are many procedures to seek reimbursement of an improperly calculated bail refund. First, testimony establishes that errors in bail refunds can be corrected simply by contacting the Office of Judicial Support and that Defendants are not aware of any instance where they were alerted to an error which was not corrected. (ECF No. 62-1 at 11; ECF No. 62-2 at 119.) But putting this aside, there are other procedures to which Plaintiff could have availed himself, but did not pursue, in order to receive the $1,116.80 he was entitled to back. First, under Pennsylvania law, Plaintiff could have filed a

"Return of Property Petition" under Pa. R. Crim P. 588 despite the lack of criminal conviction and the fact that the bail refund was for money unrelated to the conviction itself. *See In re $300,000 in United States Currency,* 259 A. 3d 1051 (Pa. Commw. Ct. 2021) (holding that Pa. R. Crim. P. 588 applied to allow in rem proceedings against the government to get back property seized even when there is no criminal conviction or charges filed). All Plaintiff would be required to establish was that he was the rightful owner of the bail refund improperly withheld, which would be easy to prove given that Delaware County is required to pay Constable and Live Scan Charges where the defendant is not convicted. *In re One 1988 Toyota Corolla,* 675 A.2d 1290 (Pa. Commw. Ct. 1996) (Under Rule 588, the aggrieved party first must establish lawful possession of the property, and the burden then shifts to the Commonwealth to prove the property is contraband). Plaintiff could have also brought a claim for replevin. Finally, individuals, such as Plaintiff, who have money incorrectly withheld from their bail refunds can vindicate their right to a refund under the Municipalities Authorities Act ("Refund Act"), and sovereign immunity is waived. 53 Pa.C.S. § 5566(b) (under the Refund Act entitling an aggrieved party to receive, upon a filing of written and verified claim, a refund for improper payments made to the local government); 42 P.S. 8522(b)(3) (waiving sovereign immunity for retention of personal property). Therefore, there are sufficient post-deprivation remedies to rectify the improper retention of Constable and Live Scan Charges, though in this case, Plaintiff choose not to avail himself of these procedures. Like *Tillman*, the clerical mistake that occurred in this case involves "routine matters of accounting, with a low risk of error." When considering the *Matthews* factors, additional pre-deprivation process would make little sense and be impractical. Thus, we discern no procedural due process violation,[5] and grant

---

[5] Because this Court finds that no underlying due process violation occurred, the Court declines to consider Plaintiff's *Monell* argument for holding Delaware County liable, as in order to establish *Monell* liability there must be an underlying constitutional violation. *Mark v. Borough of Hatboro*,

Defendants' Motion as to Plaintiff's due process claim against the Defendants Delaware County and Angela Martinez.

### b. Eighth Amendment – Excessive Fines – Delaware County

The Eighth Amendment's Excessive Fines Clause is incorporated by the Due Process Clause of the Fourteenth Amendment and therefore, applies to the states. *Timbs v. Indiana*, 139 S. Ct. 682, 689 (2019). By its plain language, however, the Excessive Fines Clause of the Eighth Amendment is violated only if the disputed fees are both "fines" and "excessive." *See United States v. Bajakajian,* 524 U.S. 321 (1998). The term "fine" refers to punishment for a criminal offense. *Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.,* 492 U.S 257, 265 (1989). The Constable and Live Scan Charges, however, do not appear to fit that mold. In fact, the charges that form the basis for this action occurred as a result of human error, not the implementation of public policy, and are therefore not properly the subject of Eighth Amendment analysis. Though the amount erroneously withheld from Plaintiff was not a trifling sum, it is relatively modest. Such fees can hardly be called fines when Constable and Live Scan charges are merely assessed by the government for a narrow and reasonable, cost-recovery purpose, and even then, only against those found guilty of committing crimes. Therefore, the Court also grants Defendants' Motion for Summary Judgment as to Plaintiff's Eighth Amendment claim.

### c. Fifth Amendment – Taking of Property – Delaware County

Plaintiff points to no case in which a court has held that bail mistakenly withheld constitutes government taking. The Takings Clause of the Fifth Amendment is applicable to the states through the Fourteenth Amendment and prohibits the government from taking private property for public

---

51 F. 3d 1137, 1149-50 (3rd Cir. 1995). The Court also need not address immunity arguments regarding Defendant Angela Martinez.

use without just compensation. *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001). Even, in this case, if one were to somehow conclude that the erroneous calculation of a bail refund constituted a default governmental taking, Defendants have already offered to provide Plaintiff with the entirety of amounts erroneously withheld ($1,116.80). Accordingly, this alleged taking is not without "just compensation." Therefore, this Court also grants Defendants' Motion for Summary Judgment as to Plaintiff's claim under the Takings Clause of the Fifth Amendment.

### d. Conversion – Defendant Angela Martinez

Having granted summary judgment as to Plaintiff's federal-law claims, the Court also dismisses Plaintiff's state law claim for conversion. A district court may decline to exercise supplemental jurisdiction if it has dismissed all the claims over which it had original jurisdiction. 28 U.S.C. § 1367 (c) (3). In non-diversity cases where the court grants summary judgement or dismisses all federal claims before trial, the general rule is that a district court should decline to exercise supplemental jurisdiction over the state law claims absent "extraordinary circumstances." *Tully v. Mott Supermarkets, Inc.,* 540 F. 2d 187, 195 (3d Cir. 1976). Since this Court no longer has original jurisdiction and no extraordinary circumstances exist to exercise jurisdiction over Plaintiff's remaining claim for conversion, the Court declines supplemental jurisdiction over Plaintiff's single state law claim.

### V. CONCLUSION

For the reasons discussed above, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's federal law claims and declines jurisdiction over Plaintiff's state law conversion claim. An appropriate Order will follow.

**IT IS SO ORDERED.**

                                          **BY THE COURT:**

                                          /s/ Judge John Milton Younge
                                                **Judge John Milton Younge**